UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ACCRETIVE TECHNOLOGY GROUP, INC., a Washington corporation, <br><br> Plaintiff, <br><br> v. <br><br> ADOBE SYSTEMS, INC., a Delaware corporation, <br><br> Defendant. | Case No. C15-309RSM <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |

## I. INTRODUCTION

This matter comes before the Court on Defendant's Motion to Dismiss Amended Complaint. Dkt. #11. Defendant Adobe Systems, Inc. ("Adobe") argues that this matter should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Id*. Specifically, Defendant asserts that Plaintiff, Accretive Technology Group, Inc. ("ATG") entered into a contract whose strict language explicitly waived any warranty or legal recourse for Plaintiff to bring suit. *Id*. Plaintiff opposes the Motion, arguing that it has alleged facts sufficient for the Court to find that Defendant breached the contract or was alternatively unjustly enriched, was negligent in its representations, violated the Consumer Protection Act, and violated the duty of good faith and fair dealing. Dkt. #14 at 6. For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion.

## II. BACKGROUND

In 2012, Plaintiff corporation ATG began searching for a software product that would assist ATG in sending marketing emails to customers. Dkt. #9 at 2. ATG met and spoke with several companies who sold such software, including Neolane, Inc. ("Neolane"). *Id.* Neolane was later acquired by Defendant Adobe. Dkt. #9 at 5; Dkt. #11 at 7.

According to Plaintiff's Amended Complaint, ATG and Neolane had numerous communications and meetings prior to the purchase of a license for Neolane's software ("Software"). Dkt. #9 at 3. Neolane representatives came to ATG's Seattle office and met with ATG's computer system technicians. *Id.* ATG alleges that "Neolane's representatives repeatedly stated and assured Accretive's representatives that its Software would work and perform on Accretive's computer system. Specifically, Neolane representatives assured Accretive that Neolane's Software would function on a MySQL database…" *Id.*

On December 21, 2012, ATG and Neolane entered into a "Software License and Maintenance Agreement" ("Agreement"). Dkt. #12-1. The Agreement states in its "Recitals" section that, subject to the terms and conditions contained therein, Neolane grants ATG a right to use the Software, provides maintenance service if purchased by ATG, and provides "in particular installation" and "parameterization" if purchased by ATG. *Id.* at 4.

The Agreement contained several warranties and limitations of warranty. Plaintiff alleges that Neolane "through its representatives and written materials, including the Software License Agreement, expressly warranted that the Neolane software would function on the Accretive computer system as intended and designed, and that [Defendant] would cause it to so function on the Accretive computer system." Dkt. #9 at 8-9. Plaintiff alleges that Neolane "expressly warranted in the Software License Agreement that the Neolane Software would comply with the technical information and documentation made available when the Neolane

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS - 2

Software was delivered. *Id.* at 9. Plaintiff alleges that the Agreement provides warranty procedures for ATG to follow if it has problems with the Software, including the opportunity for ATG to have its payments returned to it. *Id.* Plaintiff alleges that Defendant breached all of these warranties. *Id.*

Section 9 of the Agreement is titled "Warranty." Dkt. #12-1 at 9. Section 9.1 states that Neolane "warrants that the Software delivered to [Plaintiff] will substantially comply with the Documentation and that the medium on which the Software as delivered is free from material defects…" *Id.* Section 9.2 states that Neolane "undertakes to perform the obligations incumbent on it under the Agreement in accordance with normal practices and with due care and attention as befitting a professional." Section 9.4 clarifies that Neolane "does not warrant that the functions contained in the Software will meet the requirements of Licensee or that the operation of the Software and updates will be error free. Additional statements such as those made in advertising or presentations, oral or written, do not constitute warranties by Neolane and should not be relied upon as such." *Id.* Section 9.6 provides, in bold, all capital lettering:

> LICENSEE ACKNOWLEDGES THAT NEOLANE'S OBLIGATIONS AND LIABILITIES IN RESPECT OF THE PRODUCTS ARE EXHAUSTIVELY DEFINED IN THIS AGREEMENT. LICENSEE AGREES THAT THE EXPRESS OBLIGATIONS AND WARRANTIES MADE BY NEOLANE IN THIS AGREEMENT ARE IN LIEU OF, AND TO THE EXCLUSION OF, ANY WARRANTY, CONDITION, TERM, UNDERTAKING OR REPRESENTATION OF ANY KIND, EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE RELATING TO ANYTHING SUPPLIED OR PROVIDED OR SERVICES PERFORMED UNDER OR IN CONNECTION WITH THIS AGREEMENT INCLUDING (WITHOUT LIMITATION) AS TO THE CONDITION, QUALITY, PERFORMANCE, SATISFACTORY QUALITY OR FITNESS FOR PURPOSE OF THE PRODUCT(S) OR ANY PART THEREOF.

*Id.*

Section 20 of the Agreement states that "this Agreement shall constitute the entire understanding between the Parties . . . .The Agreement supersedes all prior agreements, understandings and other guarantees with regard to the subject matter of this agreement." *Id.* at 13.

An addendum to the Agreement entitled "Product Schedule No. 001" indicates that ATG purchased one year of maintenance, effective December 31, 2012, and lists an "Installation address." *Id.* at 15. The addendum states that ATG was to pay $529,530.00, which included $95,315.40 for prepayment of annual maintenance fees. *Id.* at 16. Plaintiff alleges that it was required to pay $534,530 upfront, prior to delivery of the Software, and prior to receiving technical documentation. Dkt #9 at 3. Plaintiff alleges that the Agreement provided no specifications or documentation regarding the Software and its specific capacities requirements, limitations, features and other technical information. *Id.* at 4.

Plaintiff alleges that, on or about January 23, 2013, ATG and Neolane entered into a Technical Services Schedule, which stated that Neolane would "complete high-level systems architecture of the integration of the Neolane Software into Accretive's technology infrastructure… install the Neolane Software onto Accretive's systems, and… configure the Neolane Software in a variety of other specified ways to conform it to the performance needs and technical requirements of Accretive." *Id.* at 4.

On July 17, 2013, Neolane/Adobe delivered the Software to ATG and accompanying technical documentation. *Id.* at 5. Plaintiff alleges that the technical documentation accompanying the Software stated that the Software would function on a MySQL database. *Id.*

Despite repeated efforts of Neolane/Adobe and ATG to install the Software, the Software would not function on ATG's computer system. *Id.*

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS - 4

On March 14, 2014, Adobe notified ATG that it could not cause the Software to work on ATG's computer system because of ATG's use of an incompatible MySQL database management system. *Id.* at 5-6. Adobe suggested that ATG change its database management system. *Id.* at 6. In response, ATG demanded that Adobe return to ATG all payment for the Software. *Id.* Adobe refused. *Id.*

ATG received invoices from Neolane/Adobe for "service," asking for $7,437.50 dated May 31, 2013, and $4,356.25, dated June 28, 2013. *Id.* ATG paid these invoices. *Id.*

On January 28, 2015, ATG filed a Complaint against Adobe in King County Superior Court. Adobe removed the lawsuit to this Court on March 3, 2015, and filed a Motion to Dismiss on March 5, 2015. On March 18, 2015, ATG filed an Amended Complaint. On March 23, 2015, Adobe withdrew its Motion to Dismiss ATG's original Complaint. Dkt. #10. Adobe now moves to dismiss ATG's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

### III.   DISCUSSION

**A. Legal Standard**

In making a Rule 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS - 5

complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Absent facial plausibility, Plaintiff's claims must be dismissed.  *Id.* at 570.

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

The parties agree that this dispute is governed by Washington law under the terms of the Agreement.  Dkt. #9 at 2; Dkt. #11 at 12.

**B.  Consideration of Documents Outside the Complaint**

The Court may consider documents on a motion to dismiss if "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

The Court finds that the Software License Agreement, Dkt. #12-1, is necessarily relied upon by the Amended Complaint, the document's authenticity is not in question, and there can be no dispute as to the document's relevance.  The Court will therefore rely on the Agreement in its analysis below.  The Court finds that the Installation Guide and Technical Services Guide, filed by Defendant as Dkt. ## 12-2, 12-3, 12-4, and 12-5, are referred to but not "necessarily relied upon" by the Amended Complaint, and the Court declines to rely on such documentation for its 12(b)(6) analysis.  Such documents, and the communications surrounding them, are properly raised as evidence at trial or summary judgment.

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS - 6

**C. Consideration of Extra-Contractual Statements**

Before addressing Plaintiff's claims, the Court notes that Defendant repeatedly relies on the Agreement's so-called "No-Reliance" and "Integration" clauses to exclude consideration of any extra-contractual statements pled in the Amended Complaint. *See* Dkt. #11 at 8-9; 17; 19-20. Defendant argues that any statements made by it orally or in writing outside the Agreement are not binding under the Agreement's Integration Clause, because this clause clearly manifests the parties' intent to be bound only to the written Agreement for the full scope of the parties' duties, warranties, and obligations. Dkt. #11 at 9. Defendant argues that the No-Reliance clause in Section 9.4 of the Agreement prohibits a breach of warranty claim based on extra-contractual statements. Dkt. #11 at 17.

Under Washington law, the parol evidence rule requires that "all conversations and parol agreements between the parties prior to a written agreement are so merged therein that they cannot be given in evidence for the purpose of changing the contract or showing an intention or understanding different from that expressed in the written agreement." *United Fin. Cas. Co. v. Coleman*, 173 Wn. App. 463, 471-72, 295 P.3d 763 (2012) (quoting *Buyken v. Ertner*, 33 Wn.2d 334, 342, 205 P.2d 628 (1949)). The parol evidence rule, however, "only applies to a writing intended by the parties as an 'integration' of their agreement, *i.e.* a writing intended as a final expression of the agreement's terms." *Berg v. Hudesman*, 115 Wn.2d 657, 670, 801 P.2d 222 (1990) (citation omitted). "Where a contract is only partially integrated, *i.e.*, the writing is a final expression of those terms which it contains but not a complete expression of all terms agreed upon, the terms not included in the writing may be proved by extrinsic evidence provided that the additional terms are not inconsistent with the written terms." *Id.*

Defendant insists that the Court can dismiss Plaintiff's claims without considering extra-contractual statements because the Agreement was "clearly" integrated. *See* Dkt. #11 at

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS - 7

17. However, integration of a contract is generally a question of fact. *See S.D. Deacon Corp. of Washington v. Gaston Bros. Excavating*, 150 Wn. App. 87, 93, 206 P.3d 689 (2009) (citing *Emrich v. Connell*, 105 Wn.2d 551, 556, 716 P.2d 863 (1986)). "While boilerplate integration clauses can provide strong evidence of integration, they are not operative if they are premised on incorrect statements of fact." *Id.* at 692-93 (citing *Denny's Rests. v. Sec. Union Title Ins. Co.*, 71 Wn. App. 194, 203, 859 P.2d 619 (1993)). In determining whether an agreement is integrated, "the court may consider evidence of negotiations and circumstances surrounding the formation of the contract." *Denny's Rests.*, 71 Wn. App. at 202; *S.D. Deacon Corp.*, 150 Wn. App. at 93.

Whether or not the Agreement has been fully integrated is in dispute. *See* Dkt. #9 at 3-4 ("The intent of parties was that the [Agreement] would formalize their relationship, but the intent was not that the [Agreement] was the final or comprehensive embodiment of the terms of the transaction between the parties."). The Court cannot, at this juncture, "consider evidence of negotiations and circumstances surrounding the formation of the contract," nor can it determine questions of fact. *See S.D. Deacon Corp.*, *supra* (holding that determining whether an agreement was fully integrated "is not the type of dispute that can be resolved in a summary proceeding…"). Instead, the Court must accept as true the facts of the Complaint. The Court thus assumes that the Agreement was partially integrated for purposes of this 12(b)(6) Motion, allowing for consideration of extrinsic terms not inconsistent with the written terms of the Agreement. *See Berg*, 115 Wn.2d at 670.

**D. Breach of Contract Claim**

Plaintiff's Amended Complaint alleges that Defendant breached its duties under the Agreement in several ways. First, by failing to deliver Software that complied with "statements in the technical information and documentation that the Neolane Software would function on

computer systems using a MySQL database management system." Dkt. #9 at 7. Second, that Defendant failed to timely provide the Software. Third, that Defendant failed to provide Software in the form previously represented by Defendant. Fourth, that Defendant failed to cause the Software to function on Plaintiff's system as required by the Agreement. *Id.* Plaintiff also alleges a fifth breach: that Defendant "failed to provide the maintenance called for under the [Agreement]." *Id.* Plaintiff also alleges facts sufficient to show damages. *Id.* at 8.

A breach of contract claim requires Plaintiff to establish the following: (1) the contract imposes a duty; (2) the duty is breached; and (3) the breach proximately causes damage to the plaintiff. *Nw. Indep. Forest Mfrs. V. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995).

Defendant moves to dismiss, arguing that the Amended Complaint "fails to specifically identify a contractual duty that Adobe breached." Dkt. #11 at 12. Defendant argues that the fourth alleged breach should be dismissed because it is "plainly inconsistent with the terms of the Agreement," citing to the disclaimer of warranty in Section 9.4 of the Agreement. *Id.* at 12-13. Defendant argues that the first alleged breach is impermissibly vague in referring to "a MySQL database" rather than "MySQL database version 5.0 or 5.1." *Id.* at 13. Defendant argues that the second alleged breach should be dismissed because "the Agreement contains no provisions mandating a date for delivery of the Software." *Id.* at 14. Defendant argues that the fifth alleged breach should be dismissed because "this claim is derivative of the other contract breach claims" and that Defendant "cannot be held liable for breaching the term of a maintenance provision when, through no fault of Adobe, the Software could not be installed on ATG's system." *Id.* at 14.

In Response, Plaintiff argues that its claim that Defendant failed to deliver Software complying with the technical information and documentation associated with the Agreement is

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS - 9

sufficient under the *Twombly/Iqbal* pleading standard. Dkt. #14 at 6-7. Plaintiff argues that it need not plead that the Software failed to operate on a MySQL 5.0 or 5.1 database as specified in the Agreement, because such particularity may be established after discovery at the time of trial or summary judgment. *Id.* at 7.

In Reply, Defendant argues that "[p]ost-*Iqbal* precedents require plaintiffs in breach of contract cases to identify the specific contractual term upon which the alleged breach is based," citing *BP W. Coast Products, LLC v. Shalabi*, No. C11-1341MJP, 2012 WL 441155, at *4 (W.D. Wash. Feb. 10, 2012) ("A breach of contract claim must point to a provision of the contract that was breached.").

The Court finds it odd that Plaintiff did not attach the disputed Agreement to its Complaint, and that its allegations do not cite to specific paragraphs or pages of that Agreement. However, under *BP W. Coast Products* Plaintiff is only required to "point to a provision of the contract that was breached," not *cite* to such provision. For purposes of this Motion, the Court must accept all facts alleged in the Amended Complaint as true, and make all inferences in the light most favorable to Plaintiff. *Baker*, *supra*. Given that the Agreement has been submitted by Defendant, is already being relied upon and considered by the Court, and is cited to repeatedly in Defendant's motion, Plaintiff need not cite to specific terms of the Contract in its Amended Complaint as long as the Court can understand the provisions Plaintiff is referring to in its specific allegations. The Court finds the Amended Complaint's claim regarding the functioning of the Software on "a MySQL database" sufficient under *Twombly/Iqbal* when read with the remainder of the Complaint and the Agreement (Dkt. #12-1). Plaintiff's breach of contract claim does not merely plead labels and conclusions or a formulaic recitation of the elements of a contract claim. The Court finds that the Amended

Complaint and the Agreement (Dkt. #12-1) contain sufficient factual matter to state a claim that is plausible on its face. Defendant's Motion will be denied as to this claim.

### E. Breach of Express Warranty Claim

The Amended Complaint alleges Defendant "through its representatives and written materials, including the Software License Agreement, expressly warranted that the Neolane Software would function on the Accretive computer system as intended and designed, and that [Defendant] would cause it to so function on the Accretive computer system." Dkt. #9 at 9. This allegation does not match the language found in the Agreement's "Warranty" section. Dkt. #12-1 at 9. Plaintiff also alleges that Defendant "expressly warranted in the Software License Agreement that the Neolane Software would comply with the technical information and documentation made available when the Neolane Software was delivered." *Id.* This allegation matches the language found in the Agreement's "Warranty" section 9.1. Dkt. #12-1 at 9. Plaintiff further alleges facts sufficient for breach and damages. Dkt. #9 at 9-10.

Defendant argues that these warranties contradict section 9.4 of the agreement, which states that "does not warrant that the functions contained in the Software will meet the requirements of Licensee or that the operation of the Software and updates will be error free. Additional statements such as those made in advertising or presentations, oral or written, do not constitute warranties by NEOLANE and should not be relied upon as such."

That Defendant warranted under Section 9.1 that "the Software delivered… will substantially comply with the [technical] Documentation" cannot be questioned. As to the other alleged warranty, proceeding under the assumption that this contract was partially integrated, extra-contractual evidence that does not contradict terms of the contract may be considered, and be considered as true for the purposes of this 12(b)(6) Motion. The Court finds that Plaintiff's allegations that Defendant warranted that the Software would function on

Plaintiff's computer system, and that Defendant would cause it to function, do not directly contradict Section 9.4. All inferences in favor of the Plaintiff, Section 9.4 appears on its face to limit any warranty as to "functions" of the Software once it is operating, not to disclaim a warranty that the Software would function *at all*, or to disclaim a warranty that Defendant would cause the Software to function as part of installation. Plaintiff has thus stated a claim to relief that is plausible on its face and pled facts sufficient for the Court to draw the reasonable inference that the Defendant is liable under this claim. Defendant's Motion will be denied as to this claim.

### F. Breach of Implied Warranty Claim

The Amended Complaint alleges Defendant "implicitly and impliedly warranted" that the Software would function on Defendant's computer system as intended and designed, that Defendant would cause the Software to function, and that the Software would comply with the technical documentation." Dkt. #9 at 10. Plaintiff further alleges facts sufficient for breach and damages. *Id.* at 10-11.

Disclaimer of an implied warranty requires that a seller's disclaimer be (1) conspicuous; (2) known to the buyer; and (3) specifically bargained for." *Burbo v. Harley C. Douglass, Inc.*, 125 Wn. App. 684, 693, 106 P.3d 258 (2005).

Defendant argues that all implied warranties are conspicuously disclaimed under section 9.6 of the Agreement. Dkt. #11 at 16-17. Plaintiff appears to concede this point, arguing instead that this disclaimer was not specifically bargained for. Dkt. #14 at 15. This may be true, however facts supporting this contention are not pled in Plaintiff's Amended Complaint. Accordingly, the Court will grant Defendant's Motion as to Plaintiff's breach of implied warranty claim, and dismisses this claim without prejudice. Plaintiff may amend their complaint to include specific facts, if they exist, to satisfy the above elements.

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS - 12

**G. Breach of Implied Covenant of Good Faith and Fair Dealing Claim**

The Amended Complaint alleges Defendant breached the implied covenant of good faith and fair dealing by failing to install and cause the Software to function on Plaintiff's computer system, failing to return Plaintiff's money paid after the Software would not function, failing to provide the Software to Plaintiff until nearly seven months after entry of the Agreement and upfront payment, failing to timely provide the technical documentation for the Software, and failing to provide the "technical servicing required by [the Agreement]." Dkt. #9 at 11-12. Plaintiff further alleges facts sufficient to show damages. *Id.* at 12.

Under Washington law, "[t]here is in every contract an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112 (2014) (quoting *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991)). The implied covenant of good faith and fair dealing "cannot add or contradict express contract terms and does not impose a free-floating obligation of good faith on the parties." *Rekhter*, 180 Wn.2d at 113. Instead, "the duty [of good faith and fair dealing] arises only in connection with terms agreed to by the parties." *Id.* (citations omitted). The duty can arise "when the contract gives one party discretionary authority to determine a contract term." *Id.* (quoting *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 738, 935 P.2d 628 (1997)).

Defendant argues that this claim should fail because Defendant did not violate any term of the Agreement. Dkt #11 at 25-26. However, under Washington law, the duty of good faith and fair dealing can arise even when there is no breach of an express contract term. *See Rekhter*, 180 Wn.2d at 111-12 (2014) (citing to the Seventh Circuit for the proposition that "it is, of course, possible to breach the implied duty of good faith even while fulfilling all of the terms of the written contract"). The Washington Supreme Court noted in *Rekhter* that, if a

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS - 13

violation of the contract's terms were required, "[s]uch a requirement would render the good faith and fair dealing doctrine superfluous." 180 Wn.2d at 112. Defendant goes on to argue over specific facts and whether they could satisfy this duty. Dkt #11 at 26.

Plaintiff argues that Defendant's breach of this duty "comes not necessarily from its failure to cause the Software to work, but from its decision to keep the entirety of the money paid by Accretive even after admitting that the Software would never function." Dkt. #14 at 24.

The Court does not look to Plaintiff's limited briefing on this matter, but to the Amended Complaint itself to determine whether sufficient facts are pled. Taking all alleged facts as true and all inferences in favor of Plaintiff, Defendant's actions show a lack of cooperation under the terms of the Agreement so that Plaintiff could obtain the full benefit—any benefit—of its performance under the Agreement. Plaintiff has stated a claim to relief that is plausible on its face and pled facts sufficient for the Court to draw the reasonable inference that the Defendant is liable under this claim. Defendant's Motion will be denied as to this claim.

**H. Negligent Misrepresentation Claim**

A claim for negligent misrepresentation requires the following elements: "(1) [that] the defendant supplied information for the guidance of others in business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff into the business transaction, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false representation, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages." *Ross v. Kirner*, 162 Wn.2d 493, 499, 172 P.3d 701 (2007) (citing *Lawyers Title Ins. Corp. v. Baik*, 147 Wn.2d 536, 545, 55 P.3d 619 (2002)).

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS - 14

Plaintiff's Amended Complaint alleges that, in the process of marketing its product to Plaintiff, Defendant made misrepresentations/omissions of material facts including "multiple statements, both oral and written, that the Neolane Software would work on Accretive's computer system, specifically the MySQL database upon which Accretive operates" and failing to inform Plaintiff of the limitations of the Software and the subsequent actions of Defendant to not live up to the express warranty provisions and procedures of the Agreement.  Dkt. #9 at 12-13.  Plaintiff also alleges that Defendant negligently misrepresented that the Software would function on Plaintiff's computer system, or failed to disclose the Software's limitations, at the time of and subsequent to the Agreement being entered.  *Id*. at 13.  Plaintiff alleges that Defendant "provided no information that contradicted its misrepresentations until long after entry into the Software License Agreement and upfront payment of the amounts payable thereunder." *Id.*  Plaintiff further alleges facts sufficient to show damages.  *Id.*

Defendant argues that Plaintiff must establish, by clear and convincing evidence, that it reasonably relied on false information that Defendant negligently communicated, citing to *Lawyers Title Ins. Corp*, 147 Wn.2d at 545 (2002).  Defendant argues that Plaintiff's claim that it relied on Defendant's statements that the Software would function on Plaintiff's computer system ("extra-contractual communications") is plainly unreasonable because the Agreement contained an Integration Clause and a warranty clause excluding reliance on statements made in advertising or presentations.  Dkt. #11 at 19.

The Court disagrees with Defendant's apparent assertion that Plaintiff must establish clear and convincing evidence of reasonableness at this stage in the litigation.  *See Solid 21, Inc. v. Breitling USA, Inc.*, 512 Fed.Appx. 685, 686-87 (9th Cir. 2013) (finding that "[w]hile a court may consider judicially noticeable facts in resolving a motion to dismiss… the inquiry under Rule 12(b)(6) is into the adequacy of the pleadings, not the adequacy of the evidence.").

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS - 15

The Court refuses to weigh reasonableness based solely on the Complaint and the Agreement, given Plaintiff's allegation that Defendant made material statements outside the Agreement before and after the Agreement was entered. *See* Dkt. #9 at 12-13. Taking these extra-contractual statements as true, Plaintiff can meet all of the above elements of a claim for negligent misrepresentation and has stated a claim to relief that is plausible on its face.

**I.  CPA Claim**

Plaintiff's Amended Complaint alleges that Defendant's actions in this case violated Washington's Consumer Protections Act, RCW 19.86, *et seq.* ("CPA"). Dkt. #9 at 13-15. In order to make a claim under the CPA, Plaintiff must show: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) causes injury to the Plaintiffs' business or property; and (5) causation. *Hangman Ridge Training Stables v. Safeco Title Ins. Co*, 105 Wn.2d 778, 780 (1986). Under the *Hangman Ridge* test, a plaintiff may base a CPA claim on a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of the public interest. *Klem v. Washington Mutual*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013). Plaintiff appears to base its CPA claim on the latter – an unfair or deceptive act or practice not regulated by statute but in violation of the public interest. "Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest." *Id.* (citing *Lightfoot v. MacDonald*, 86 Wn.2d 331, 334, 544 P.2d 88 (1976)). Factors indicating public interest in this context include: "(1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?" *Hangman Ridge*, 105 Wn.2d at 790-791. Further, to

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS - 16

establish the public interest element, there must be a real and substantial potential for repetition, "'as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated.'" *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 604-05, 200 P.3d 695 (2009) (quoting *Eastlake Constr. Co., Inc. v. Hess*, 102 Wn.2d 30, 52, 686 P.2d 465 (1984)).

Even if all the specific facts pled by Plaintiff were true, Plaintiff has failed to meet the public interest requirement. Plaintiff's conclusory and hypothetical statement that "there is a likelihood that additional persons have been or will be injured" by Defendant because Defendant is "a multinational corporation that licenses Software products to hundreds of millions of users," Dkt. #9 at 14, amounts to mere labels and conclusions impermissible under the *Twombly/Iqbal* standard above. Plaintiff has already amended their Complaint once after being put on notice of this deficiency. *See* Dkt. #6 at 15-16. The Court finds that any further amendment to Plaintiff's CPA claim would be futile. Accordingly, the Court will grant Defendant's Motion as to Plaintiff's CPA claim, and dismisses this claim with prejudice.

### J. Unjust Enrichment Claim

Plaintiff's Amended Complaint alleges in the alternative that Defendant's actions in this case resulted in unjust enrichment. Dkt. #9 at 15. Plaintiff further alleges facts sufficient to show damages. *Id.*

A claim for unjust enrichment requires the following elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) knowledge by the defendant of the benefit; and (3) the defendant retains the benefit under circumstances that make it inequitable to do so. *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008).

Under the allege facts, Defendant clearly obtained a benefit in the form of the $534,530 paid upfront by Plaintiff. Dkt #9 at 3. Defendant clearly had knowledge of this benefit from the time of the Agreement through the delivery of the incompatible Software, through the

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS - 17

| | |
|---|---|
| 1 | attempts to resolve the incompatibility, and to the time of Plaintiff filing suit. The |
| 2 | circumstances described by Plaintiff, if true, make a plausible case for inequity. |

Plaintiff's unjust enrichment claim is not "merely a re-pleading of the breach of contract claim under a different name," as argued by Defendant at Dkt. #18 at 13. Plaintiff has pled sufficient facts in this case to for the Court to draw the reasonable inference that the Defendant was unjustly enriched. As such, the Court will deny Defendant's motion to dismiss this claim.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1) Defendant's Motion to Dismiss (Dkt. #11) is GRANTED IN PART AND DENIED IN PART as follows:

   a. Defendant's Motion to Dismiss Plaintiff's breach of contract claim is DENIED.

   b. Defendant's Motion to Dismiss Plaintiff's breach of express warranty claim is DENIED.

   c. Defendant's Motion to Dismiss Plaintiff's breach of implied warranty claim is GRANTED without prejudice.

   d. Defendant's Motion to Dismiss Plaintiff's breach of the implied covenant of good faith and fair dealing claim is DENIED.

   e. Defendant's Motion to Dismiss Plaintiff's negligent misrepresentation claim is DENIED.

   f. Defendant's Motion to Dismiss Plaintiff's violation of the Consumer Protections Act claim is GRANTED with prejudice.

g. Defendant's Motion to Dismiss Plaintiff's unjust enrichment claim is DENIED.

2) If Plaintiff wishes to amend its Amended Complaint with respect to its claim for breach of implied warranty, it is permitted to do so within <u>fourteen (14) days of the date of this Order.</u>

DATED this 17 day of August, 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE